Good morning, Your Honors. Martin Guajardo on behalf of Reynaldo Martinez-Jaracuaro. The case cited by counsel for the government, Bojorquez, this case actually I think is dispositive of the issues that we're bringing to this Court. What we have in Bojorquez is we have an individual who was in the United States for nearly 30 years. She came here. She was an illegal alien from 1970 to about 1980. And then as a result of the Immigration Reform and Control Act of 1986, she was able to adjust her status to that of a permanent resident. She did that because she was apparently a worker, a special agricultural worker, and she secured her permanent residence. Shortly thereafter, she is convicted of this charge of having helped somebody come across to the United States. And the next thing you notice, she's in deportation proceedings in front of an immigration judge. This circuit in the Robles decision found that 212C would be available, notwithstanding what we saw happen with ADEPA. ADEPA came around April 24th, 1996, and essentially wiped the slate clean and said, look, we're not going to have waivers, 212C waivers anymore. They're out. And if it's an aggravated felony, it's not going to be available. If you're looking for a waiver, if you're a noncitizen green card holder, your waiver will be bound to something that may be a felony, but not an aggravated felony. Robles is decided by the circuit, and during the time that Robles is decided by the circuit, Martinez's case, or the Bohorkes case, is up at the board. Relief becomes available. The case is sent back. So that's what we know about Bohorkes. And it's sent back specifically for a 212C evaluation. Is she eligible for this waiver? If we juxtapose Martinez's case to the Bohorkes case, we're going to find very similar facts in the case. What we're going to find is we have an individual who, but for his untimely departure from the United States at the hands of the agency, he would have now been here for at least 25 years. He comes in 1980. As a result of the IRCA of 1986, he's able to adjust the status. Also, because he worked out in the fields and so forth, he gets his green card. Is this guy an aggravated felon? I don't think so, Your Honor. What was he convicted of? He was convicted of what we call a soft 245. It would have been an assault. Assault by force likely to produce great bodily injury? That is correct. And it was never because our exhibits here, we have the transcript of the record of the Supreme Court judge down in San Mateo. And I think that what we have is the sentencing structure that the judge down in San Mateo gave this case. We're looking to what we recognize as a 17B. And essentially what you have is you have, on the one hand, the defense lawyer asking the court, let him go ahead and take the nine months and counsel for the people. He's saying, look, I don't see what we should have here. This man is not showing that he's really remorseful of having gotten in a fight with his wife. As far as we're concerned, we want the 12 months. The judge says, okay, we're going to cut the baby in half. This is what we're going to do. We'll put him six months in county jail. And then after that, let him participate in a program, halfway house, if you will, outside. With the understanding that you would come back and make a modification once he was released from county jail, you have the intervening event of the agency coming in because they have an INS hold. Once he's released from county jail at the end of six months, they snag him, they bring him over, and they place him in proceedings. He's not able to participate in that halfway house. The question for us is, does the sentencing structure that was provided by the San Mateo court judge, does that take this case away from what we define in immigration as a 101A43 subsection F, which is the crime of violence for 365 days or more, or does it retreat into what would be not a crime of violence, but she would become eligible for relief as we've had filed an application for cancellation under 248 uppercase A, lowercase A, for cancellation removal post-April 1st, 1997. And I don't even think we have to go that far, because this case, when we look at Bojorquez, we recognize that Bojorquez has relief because this Court in Robles essentially resurrects 212C relief. By the time Bojorquez is in front of the immigration judge in 1998, we have Robles that's backing us up, and we're saying, well, now we can apply for 212C relief. What happens in our case is we don't have Robles anymore. We have the Court. I'm sure it will take judicial notice that we have the Supreme Court decision of St. Cyr in June of 2001 essentially putting back on the table 212C relief for anyone who has the conviction prior to April 24th, 1996, or has pled notwithstanding that judgment hasn't entered. What we have occurring last in the Court, I'm sure, will take notice of this. A few months ago, the, if you will, the rules that would apply to 212C cases post-St. Cyr were finally published and adopted by the agency. And the agency now essentially has moved that period of June of April 24th, 1996, has moved it up to the effective date of April 1st, 1997. And if we look at the record here, we realize that Martinez-Aracajo, our client, pled prior to the April 1st, 1997. Counsel for the government says, where's the prejudice? The prejudice is identical in our case to what you have in Bojorquez. Identical. Bojorquez, when the case goes up, during the pendency of the appeal, Robles becomes available, the waiver becomes available. So our case, but for the mix-up in providing us a copy of the decision, our case would have been up here before the Court. We would have properly filed an appeal. And the question is, Your Honor asked me a question, is don't we have an aggravated felony under 237A2A triple I as defined because you have the crime of violence under 101A43F because it's over 365 days? And the answer would be this Court has jurisdiction to determine its own jurisdiction and by doing so, you have the question of jurisdiction collapse into the question of the merits. What happens if we decide it is an aggravated felony? What happens to your case? It doesn't matter. It doesn't matter because now the rules in counsel for the government can confirm this for us today. Ms. Drucker, she will tell the Court, because the published rules for 212C adjudication post the U.S. Supreme Court decision of St. Cyr, it now allows for someone who was convicted up, who pled guilty up through April 1st, 1997 to take advantage of 212C relief just the way Bohorkes did in her case. Bohorkes, when she went in front of the immigration, when she went, when they began proceedings, I think it was in 1992, when they began proceedings, the question was is 212C available? There's no question that there was an issue of relief. But by the time the Court here deals with Robles, we have the issue of the changing law, changing, if you will, panorama of waivers available. So to answer the question, does it make a difference today if Martinez-Jaraquaro is convicted in an aggravated felony? Absolutely not. He is absolutely today entitled to make his application for relief under 212C because he pled prior to the effective date of Ira. Ira. Well, from your standpoint, it doesn't make any difference. That's not a material issue. I'm sorry. That's not a material issue for you as to whether it was a felony or misdemeanor. Not at this juncture. As a result of what has occurred with both the Supreme Court decision and the published rules as to how to apply for 212C today. The question is, has our client suffered prejudice? The same prejudice that Warhawk has suffered because he would have proceeded when the Board sent out a decision. They sent out a decision, if you will, for a moment. You know, having been to Cincinnati out there during the summer and argued out of the Sixth Circuit, I can tell you that, you know, you look around and here in San Francisco, we're at the Transamerica building. You walk across the street and that's where we moved to. And everyone in the neighborhood knows that that's where we moved to. I mean, there's – our presence is there. If we have – if you're in Cincinnati, it's a much smaller place. And if you're – if the Board is charged with delivery of notice to you, it wouldn't have taken much for the Board to have said, look, looks like we got the mail back. They killed the mail. Someone did. Here's the affidavit. Why don't we just go ahead and take it and send it back to the attorney so that he can file his petition? I've run out of time, but that's all we have. Thank you very much. Thank you. Good morning, Ms. Drucker. Good morning, Your Honors. May it please the Court. Allison Drucker representing the United States. In our view, the only order before the Court is the BIA's order of June 17, 2003, which treated Petitioner's motion to reissue the Board's earlier order as withdrawn because of his departure from the United States. Now, if we analogize to the denial of a motion to reopen, the standard of review of that order, the June order, is abuse of discretion. We feel that there's no abuse of discretion here in law or in equity. The Petitioner received all the due process that he was entitled to under the law. He had a hearing with an immigration judge. He had appeal before the BIA. The BIA considered his stay motion before his deportation. What he is essentially seeking now is post-judgment relief. Petitioner, it's crucial to us, I think, that it's only the June 2003 order that's before the Court. The Petitioner has not challenged the regulation relied on by the Board in that order. He has not cited any legal authority which would create an exception to that regulation. And in our view, this alone should be enough for the Court to find no abuse of discretion. But even if the Court looks to equity rather than law, Petitioner is not alleging that the Board made any mistake. If he was alleging that the Board had sent notice to the wrong address, then that would be a different case. But he's not alleging any error by the Board at all. He's alleging a mistake by a third party. Can I ask you a question? It's just something about the case that seems a little wacky to me. In May of 2003, he makes a motion to stay deportation, which the BIA denied. He denied the motion to stay deportation. A couple of days later, he's deported. And then the BIA says in June of June 17, 2003, the fact of his deportation, which he sought to stay, which was denied because he's been deported, that's the equivalent of withdrawing his motion. Yeah, leaving the United States, whether it's voluntary or involuntary, under the Board's regulations, withdraws the motion, the prior motion. What regulation is that? I believe it's cited in the Board's order. Don't deport me while this is pending. They deport him. And then he says, now that you've been deported, we're going to deem your relief withdrawn. When they look at the stay, they make sort of a preliminary assessment of whether they think he has a reasonable chance to prevail on the merits, and their response was no. So that's ACFR 1003.2d, I believe. It's cited in the Board's order. So the dial of the motion to stay really is the dias cas, right? Because then if he gets deported, his request for relief is withdrawn. Now, it's also significant that Petitioner here, in terms of the equity aspect of this case, failed to show due diligence. I mean, basically he's saying that he was deprived of an opportunity to come to this court on a petition, well, I guess it wouldn't have been a petition, but he was deprived of an opportunity to seek judicial review. From the decision of the BIA, because he didn't receive it timely. But he, in fact, would have an obligation to periodically check with the BIA. I mean, at least once his brief was filed with the BIA, and sooner or later they would make a decision. And he had that responsibility to be checking to see if the appeal had been decided. He has not made any statement that he ever checked in this way. How long period of time elapsed there? Let's see. He filed his brief with the board in December of 2000, and the board decided the case in May of 2002. Now, there's also been some discussions about, of course, the effect of Borokay's on this case. Okay, one thing is, in the Borokay's case, what the alien lost when departing the United States was a loss of an appeal, the opportunity to appeal to the BIA. This is not a loss of an appeal. This is, as I said before, it's really post-judgment relief. The loss of the motion. Now, another question is about the eligibility for relief during proceedings. Do you think it makes any difference whether we find that this was a felony or a misdemeanor, his conviction? Well, I have to tell you, I'm not completely clear on this, and I would be happy to offer to provide something, a supplement to the court, because this issue about the 212C I don't believe was covered in the briefs to the court. And I'm not completely sure, under the new law, if aggravated felonies, people who have been convicted of aggravated felonies would be eligible, as Petitioner is telling you. I have great doubts about that, seeing that Congress has been very negative about those convicted of aggravated felonies. And I will tell you that I certainly believe that the Petitioner here, there's no question that he was convicted of an aggravated felony, and he has no, you know, there's no argument that's plausible about that. It's your position that we don't have jurisdiction if that was a felony, unless what your opponent says comes to be, as 212. That sounds right, Your Honor. But you haven't researched that, because he didn't raise it in his brief. I haven't. Yeah, this 212C angle is something I'm not, because of the changes in the law that he's referring to via recent expansion, I'm not completely certain about that. But in terms of him being an aggravated felon, I mean, that's really clear. He only raised two issues about that at any point before the board. And of course, to have raised anything to the court, subsequently, he would have had to exhaust. The two points that he raised, one was in his notice of appeal to the board. This is in September of 99. And basically, he said that his denial of a motion to terminate was erroneous, because he didn't have a firearms conviction. This related to something that had already been fixed. He originally had been charged incorrectly. He was guilty of assault by force to commit great bodily injury. That's right. But apparently, there was something about with a firearm.  And that was later amended. The charges were amended, and that was fixed before the immigration judge entered his decision. So there's no basis to that. That's not a problem. The other thing, in his brief to the board, he had one issue. And that was that he was not an aggravated felon, because he had not been sentenced to a year or more. This involves a provision of a crime of violence, and you have to have a sentence of a year or more. And he was saying, because the county jail sentence that he had was modifiable, in part, to residential treatment, that that wasn't a year. But that's totally wrong. It has to be wrong, because under both the statute and precedent of this court in Echevarria, which I think we cited in our brief, even if you get a suspended sentence, that time still counts. So the fact that you would be in a treatment center or something less than total security prison, it still counts towards the sentence. There's just no question about it. So he has no way to say that this is not an aggravated felony. Did the state court say this was a felony in its sentence or judgment? I'm not sure about that. Your Honor, I don't think I have the actual document before me, but it must be in the record. So I guess, does the court... I see I'm getting close to being out of time. Does the court have any other questions for me? Thank you, Ms. Drucker. Mr. Guajara, you have just a few seconds left. If you'd like to use them, you may. Thank you, Your Honor. Judge Siler, the answer to the question would be found at Exhibit G, our excerpts of record, and that would be at page 11, the transcript from the Superior Court judge, which provides for at line 17, and this sentence is modifiable to a residential treatment program after serving a six-month actual time in county jail. Did he ever say misdemeanor or felony in there? It's couched as a felony. There's no question about that. It's couched as a felony, but in California we have a 17B provision, so that... But it's set forth in the transcript, so... But 17B says what? Essentially, we have a classification of crimes, both as felonies and misdemeanors, and in those instances where you may have a felony that may straddle the fence, if you will, as a felony and misdemeanor, with regard to the sentencing, and in this case the sentencing structure was... Doesn't the judge have to say, I will treat this as a misdemeanor rather than a felony? My experience, Your Honor, has been that the... No, not your experience. Okay. My recollection from very, very early this morning as I went through 17B, down towards the bottom portion of it, is that the court would identify it as... But I think it's identified by way of time. Well, in this case, the court, in fact, didn't impose sentence, did it? Correct. Pardon me? It's an imposition of sentence that's suspended. That's correct. And if it did not say, I'm going to treat this as a misdemeanor, then there's a felony conviction, and the court is not imposing sentence on that felony. Isn't that true? Right. Providing terms and conditions of probation or terms and conditions as it's set forth. I don't... Maybe I'm missing the question. Well, I think you should go back and read 17. Okay. Thank you, Your Honor. Thank you. And, Ms. Drucker, thank you. The case just argued is submitted. Good morning. The next three cases are submitted at this time on the brief 037-2676. Excuse me for a second. Ms. Drucker, Mr. Guajardo. Just a second. Ms. Drucker, Mr. Guajardo, Judge Allerkind just mentioned perhaps you'd want to respond to the 212-C issue with a supplemental briefing. Mr. Guajardo, how does that grab you? You think we could get that within 14 days or so?    Thank you. Thank you. Thank you. Thank you. Thank you. Up to 5 pages, say, a letter brief? Okay. Great. Good idea, Judge Allerkind. Thank you. Okay. 037-2676, Singh v. Ashcroft, 03-16147, Sinha v. Federal Reserve Bank, and 03-16988, Stoico v. Federal Express Long-Term Disability Plan. These cases are submitted on the briefs at this time. Next case to be argued is 03-16170, General Glenn Davis v. The City of Oakland. This has been calendared for 20 minutes. We've conferred and we asked if counsel would do it in 10 minutes per side. We'd appreciate it.
judges: Alarcon, Siler , Silverman